HEARD NOVEMBER TERM, 1878.

CASE No. 701.

NANCY E. CRAIG AND ROBERT J. CRAIG v. WILLIAM C. BEATTY, WILLIAM H. McCORKLE, EXECUTORS, AND OTHERS.

1. Testatrix died in 1860, and directed her executors to place a sum of money in the hands of W. W. and W. H. M., "who are earnestly requested and directed to place said sum of money at interest, and to expend said interest as it annually accrues, in providing clothing" and other articles for the comfort of certain negro slaves; and if the executors or said W. W. and W. H. M. are prevented "by any legal action and determination from carrying out" these "provisions and injunctions," or at the death of said negroes, then said sum of money to others (white persons.) *Held*, that testatrix intended to create a trust for the benefit of slaves, and the bequest was therefore void under Section 4, of act of 1841. 11 *Stat.* 154.

2. A failure for four years after probate of a will in common form to dispute the validity of its provisions cannot be construed into acquiescence in such provisions, nor does it bar the right to have the above-recited directions declared null and void.

3. When a testatrix in her will intended a trust, which could not take effect, the property so intended will pass either to the residuary legatees, or to the distributees under the statute, according to the terms of the will.

---

Before HUDSON, J., at York, March Term, 1878.

This was an action brought by the plaintiffs against William C. Beatty and William H. McCorkle, executors of the will of Nancy Blair, and certain negroes mentioned in the second section of said will, and certain other persons named in this same section, who were to take the legacy and interest, if the negroes should not be permitted to enjoy the interest. The section of the will construed by the court is set forth in the opinion. The negroes mentioned in the will were slaves of testatrix. Testatrix died in October, 1860, and her will was admitted to probate in York district in November of the same year. The William Wright and William H. McCorkle referred to in the second section were also appointed executors of the will, but William Wright having died before testatrix, she substituted, by a codicil, William C. Beatty as executor, but not as trustee.

The Circuit judge held that the second section of the will was null and void, so far as it regards these negro slaves; and the. negroes appealed to this court.*

*Mr. James F. Hart*, for appellants.

*Mr. C. E. Spencer*, for respondents.

April 2d, 1879.   The opinion of the court was delivered by
HASKELL, A. J.   The appellants, Jacob and Isaac Blair and Jane Woody, were slaves, belonging to the testatrix, and claim under the second section of her will, which is as follows : " I will and enjoin that the sum of two thousand dollars be reserved by my executors and placed in the hands of William Wright and William H. McCorkle, who are earnestly requested and directed to place said sum of money at interest, and expend the interest, as it annually accrues, in providing clothing, sugar, coffee, and such other necessaries and articles as they may deem proper for the comfort of the negroes, Isaac, Jacob, Adeline, and such other of my negroes that may be alive at my death, during their natural lives, and at their death, or if my executors or the individuals first named in this section of my will be prevented by any legal action and determination from carrying out the provisions and injunctions of this ' second ' section, then, and in that case, the said principal and interest not expended by said legal proceedings, or otherwise, are to be equally divided between Mary, Margaret and John Blair," and others.

The action is brought by these legatees or their legal representatives.   The former slaves are made parties, and their right, if they have any, is the question before this court, they being the only parties who appeal.   The Circuit judge decided that as regards these appellants, the second section of the will which relates to them is null and void under the fourth section of the act of 1841, which is as follows: " That every devise or bequest to a slave or slaves, or to any person upon a trust or confidence, secret or expressed, for the benefit of any slave or slaves, shall be null and void."   11 *Stat.* 154.   It is argued in behalf of the

*The Reporter has not been furnished with the brief.

appellants that the gift to Wright and McCorkle is not obnoxious to the said act, because it is neither a bequest to slaves nor a trust secret or expressed for their benefit, but is a provision for the necessary support of the slaves under the act of 1740. That act imposes a duty upon the owner of a slave, and a penalty for its non-observance. It is a mistake to think that the bequest to Wright and McCorkle constituted a gift to the owners of the slaves. It is argued that the slaves were not disposed of by the will, and that the legal title remained in the executors, and that the bequest was to the executors. Such, however, is not the fact. It is true that Wright and McCorkle were appointed executors, but Wright died in the lifetime of the testatrix, and by a codicil William C. Beatty was made executor in his stead, but was not substituted in his place in the other capacity. Besides, the testatrix herself draws the distinction that in the one character they, as individuals, or in the other, as executors, they may be prevented from executing her wishes. But they are actually different persons, so that argument is without foundation. This fact draws a wide distinction between the present case and that of *Ford* v. *Porter*, 11 *Rich. Eq.* 238, on which the appellants mainly rely. But the extent to which *Ford* v. *Porter* goes on that subject is that an absolute gift to the owner of a slave is not impaired by an accompanying but purely precatory recommendation that the gift be applied to the support of certain of his (the donee's) slaves in their old age. "That a gift to enable the legatee to confer a bounty is not a trust, but a beneficial legacy. How (the court asks) can a gift to the master be a legacy or benefit to the slave, except at the master's discretion?" *Id.* 255. That whole case hung upon the point that the gift of the slaves and the gift of the money to the same legatees were respectively absolute gifts, without any trust, and that the recommendations with regard to the treatment of the slaves and the use of the money were in no sense imperative. But in the case before us the language of the will admits of no such construction. The executors are directed to place the money in the hands of Wright and McCorkle for certain purposes distinctly stated. There is no gift to them personally, with a mere request or recommendation on the part of the testa-

trix, submitting its execution wholly to their own discretion. On the contrary, her directions are in the plainest terms imperative and mandatory. The donees are " directed " to invest the money and to apply the interest exclusively for the benefit of others, and in the event that they be "*prevented by any legal action and determination* from carrying out the *provisions* and *injunctions* of this ' second ' section, then " she directs them to turn the money over to certain persons whom she names as her legatees. A power in the nature of a trust is thus conferred upon them, and nothing more. It is difficult to find room to doubt the intention of the testatrix not to give anything to Wright and McCorkle for their own benefit, and there is no room to doubt the plain legal meaning of her language.

For the distinction between precatory and mandatory expressions, " the one *inclining*, the other *compelling* " the donee " to execute the purpose," we need only refer to the language of Lord Eldon, as cited in *Ford* v. *Porter, supra,* and *Ford* v. *Dangerfield*, 8 *Rich. Eq.* 102, and to the authorities collected together upon the whole subject under the case of *Harding* v. *Glyn*, 2 *Lead. Cas. in Eq., Part II.*, 1833, (*4th ed.*) \*946, 957. In this case the words are imperative, the subject matter of the wish or direction is certain, the object or persons intended to have the benefit of the directions or wishes expressed are certain, and finally the taker has no discretionary power to withdraw the subject from the object to which it is directed by the testatrix. Those are the usual tests, and when they all exist, as in this case, the intention, to create a trust cannot be questioned. Such trust is inhibited by the act of 1841, the *cestuis que trust* being slaves. The case of *Fable* v. *Brown*, 2 *Hill Ch.* 389, was decided in 1835. It held that a bequest to a slave was not void, and that a trust in his favor might be executed. The fourth section of the act of 1841 reverses such propositions directly, and that case is no longer authority upon the point.

The next ground is, that even if the section of the will under consideration be contrary to the act of 1841, still it is not void but voidable, and that being merely voidable the parties in interest may be estopped by actual acquiescence, or by what must be legally construed to be acquiescence. The case of *Ford* v. *Porter*,

*supra,* is cited to show that such gift in trust for the benefit of slaves, is only voidable and not void until so adjudicated. There is no such point in that case. It is, however, held in *Vose* v. *Hannahan,* 10 *Rich.* 465, that a gift of slaves declared by Section 3 of the act of 1841 to be void, is void only for the benefit of the distributees or next of kin of the donor, "but is good as against the donor or administrator." By reference to the case and to the act, it will be seen that the cause which led to such conclusion under Section 3 of the act does not exist with regard to Section 4, and that as to the latter, no such conclusion has ever been reached. Even if such could be the decision here, it would be of no force for the purpose to which the appellants endeavor to apply it. For it cannot be denied that the proper parties to test the voidability of the bequest are before the court. It seems to be admitted. And the appellants rely solely upon the ground that these parties are estopped by acquiescence. The Circuit judge decides that there was no actual acquiescence, and we see no evidence to disturb such finding.

It is contended, however, in behalf of the appellants, that there has been acquiescence by operation of law. That more than four years having elapsed since the probate of the will, and since the parties have all been of age, that they are barred, and they rest upon the case of *Kinard* v. *Riddlehouver,* 3 *Rich.* 258, and the act of 1839. That case and the act mean nothing more than that parties are barred from requiring proof in solemn form after four years' acquiescence in the probate in common form; time running against those who were infants at the time of probate after they come of age. Parties are only precluded from disputing the testamentary character of the instrument, the execution of the will; but the court before which the will is brought for construction is not precluded, nor are the parties in interest. The testamentary character of the instrument is not in question at all. The parties claim under it. The executors ask instructions as to its legal meaning. Acquiescence in the probate is not acquiescence in all or any of the provisions of the instrument. It may be a will and yet all its provisions may be void. Examination of *Kinard* v. *Riddlehouver, supra,* and the subsequent proceedings between the parties, in 1 *Hill Ch.* 376, will show clearly

that the principles therein enumerated are not at all applicable to the point named in the present case. We must decide, therefore, that there has been no acquiescence, and the bequest, even if not *ab initio* void, but only voidable, cannot be sustained in behalf of the appellants. It was, perhaps, unnecessary, to consider the question, but it was urged, and it has received the fullest consideration.

The last ground is, that whatever may have been the law when the will went into effect, it does not now prohibit a bequest to these persons who have been emancipated and are able to take and to hold property. That question has been conclusively determined in *Blakely* v. *Tisdale*, 14 *Rich. Eq.* 95. Nothing is more familiar than that "if the testator meant to create a trust and not to make an absolute gift, but the trust is ineffectually created or is not expressed at all, or fails, the next of kin take." The testatrix in this case evidently was in doubt as to this bequest, and has selected the legatees to whom the money should go in the event that her bequest for the benefit of the slaves should not be sustained. The will was probably drawn before the case of *Ford* v. *Porter* was decided, and the testatrix died before the case was reported. The provision she attempted to make was, however, so dubious in its validity that she went on, and in that event disposed of the property. But the bequest was unquestionably void under the act, and that view is fully sustained by the reasoning throughout in *Ford* v. *Porter*. The money, therefore, or the right to the money, went at once to the parties entitled under the statute of distributions or the provisions of the will, as the case might be. The constitutionality of the act of 1841 is made a question, but no reason being advanced to support it, and the court perceiving none to sustain such a view, it is deemed unnecessary to further discuss it. The judgment, so far as the appellants are concerned, is affirmed. Motion refused.

Appeal dismissed.

WILLARD, C. J., and McIVER, A. J., concurred.